# OF THE
# STATE OF DELAWARE

BONNIE W. DAVID
MASTER IN CHANCERY

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Date Submitted: June 1, 2023
Final Report: June 2, 2023

Dean A. Campbell, Esq.
The Law Office of Dean A. Campbell, PA
703 Chestnut Street
Milton, Delaware 19968

Chad J. Toms, Esq.
Quinn T. Griffith, Esq.
Whiteford Taylor & Preston LLC
600 N. King Street, Suite 300
Wilmington, Delaware 19801

RE:     *Friends of Plantations East v. Plantations East Homeowners Association, Inc.*, C.A. No. 2023-0542-BWD

Dear Counsel:

On May 19, 2023, plaintiff Friends of Plantations East ("FPE") initiated this action by filing a Verified Complaint for Declaratory Judgment and Injunctive Relief (the "Complaint"), accompanied by a Motion to Expedite and a Motion for Preliminary Injunction.

FPE is an unincorporated group of real property owners in the Plantations East community located in Lewes, Delaware. The defendant is Plantations East Homeowners Association, Inc. (the "Association"), a Delaware nonstock corporation tasked with promoting the interests of homeowners in the Plantations East community. The Complaint challenges the Association's solicitation of member votes by mail ballot to approve conversion of the community's central gas

system from liquid propane to natural gas (the "Ballot Solicitation"). Through the Motion for Preliminary Injunction, FPE seeks an order preliminarily enjoining the Association from signing, executing, or entering into any contracts for purposes of the planned conversion, or otherwise furthering the conversion.[1]

"Under the well-known standard for a preliminary injunction, a plaintiff must demonstrate: (1) a reasonable probability of success on the merits; (2) that absent preliminary injunctive relief, it faces imminent and irreparable injury; and (3) that such harm outweighs the harm that may result from the injunction, should it prove to have been improvidently granted." *Ascension Ins. Holdings, LLC v. Underwood*, 2015 WL 356002, at *1 (Del. Ch. Jan. 28, 2015).

FPE challenges the Ballot Solicitation on three grounds. First, FPE contends that the Association's governing documents foreclose member action without a meeting. Second, FPE argues that, assuming a ballot vote without a meeting is authorized by the Association's governing documents, the ballots submitted to the members failed to comply with procedural requirements in Section 81-310 of the Delaware Uniform Common Interest Ownership Act ("DUCIOA"). Finally, FPE suggests that Section 228 of the Delaware General Corporation Law ("DGCL"),

---

[1] A hearing on the Motion for Preliminary Injunction was held on June 1, 2023.

which governs stockholder action by written consent, imposes additional requirements on member votes by ballot without a meeting, including that votes may not be solicited over a period longer than 60 days.

In response, the Association contends that the community is a "small preexisting planned community" under 25 *Del. C.* § 81-120, which exempts the Association from Section 81-310 of the DUCIOA. The Association further argues that the ballots were not "written consents" under Section 228 of the DGCL, and that if the ballots were written consents, they complied with the requirements of that statute.

To assess whether FPE is likely to succeed on the merits of its claims, I must first determine whether the Ballot Solicitation is governed by Section 81-310 of the DUCIOA or Section 228 of the DGCL. Section 81-120 of the DUCIOA provides:

> If a cooperative or planned community created within this State before the effective date of this chapter, contains no more than 20 units and is not subject to any development rights expanding it to include more than 20 units, or ***the annual average common expense liability of each unit restricted to residential purposes, exclusive of optional user fees and any insurance premiums paid by the association, does not exceed $500, as adjusted*** pursuant to this section, ***it is subject only to §§ 81-105*** (Separate titles and taxation), ***81-106*** (Applicability of local ordinances, regulations, and building codes), and ***81-107*** of this title (Eminent domain), ***but to no other sections of this chapter*** unless the declaration is amended in conformity with applicable law and with the procedures and requirements of the declaration to take advantage of the provisions of §§ 81-121 of this title, in which case all the sections

enumerated in § 81-119 of this title apply to that cooperative or planned community.

25 *Del. C.* § 81-120 (emphasis added). The Association submits that at the time of the Ballot Solicitation, it was a planned community, incorporated prior to the enactment of the DUCIOA, in which the annual average common expense liability of each unit restricted to residential purposes, exclusive of optional user fees and any insurance premiums paid by the association, did not exceed $500.00, as adjusted. Plantations E. Homeowners Ass'n, Inc.'s Omnibus Br. in Opp'n to Friends of Plantations E.'s Mot. for Prelim. Inj. and Mot. to Expedite at 8, Dkt. 5 [hereinafter, "Opp'n"]. FPE has not disputed that factual assertion. Instead, it argues that Section 81-120 does not apply because the community consists of more than 20 units. The only logical reading of Section 81-120, however, is that if a pre-existing community *either* "contains no more than 20 units . . . *or* the annual average common expense liability of each unit . . . does not exceed $500," then Sections 81-105, 81-106 and 81-107, but no other sections of the DUCIOA, apply. Accordingly, the Ballot Solicitation is governed by Section 228 of the DGCL.

FPE's claim that the Association's members may not act by written consent is not likely to succeed. Section 228(b) provides:

> ***Unless otherwise provided in the certificate of incorporation***, any action required by this chapter to be taken at a meeting of the members

> of a nonstock corporation, or any action which may be taken at any meeting of the members of a nonstock corporation, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by members having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all members having a right to vote thereon were present and voted and shall be delivered to the corporation by delivery to its registered office in this State, its principal place of business or an officer or agent of the corporation having custody of the book in which proceedings of meetings of members are recorded.

8 *Del. C.* § 228(b) (emphasis added). FPE contends that the Association's governing documents contemplate member votes at annual or special meetings, thereby *implicitly* prohibiting action by any other means, including by mail ballot (or written consent). This argument fails because to alter the statutory default, a certificate of incorporation must *explicitly* disallow action by written consent. *Cf. Paul v. Delaware Coastal Anesthesia, LLC*, 2012 WL 1934469, at *2-3 (Del. Ch. May 29, 2012) (concluding that an Operating Agreement did not "'otherwise provide,'" "so as to preempt, actions by written consent" where "nothing in the Operating Agreement specifically disallow[ed] votes by written consent" (citing 6 *Del. C.* § 18-302(d))). The Association's certificate contains no such prohibition, so members may act by written consent.

FPE also has not established that it is likely to succeed on its claim that the

Ballot Solicitation violated Section 228.[2]  Section 228(c) requires that:

> Every written consent shall bear the date of signature of each
> stockholder or member who signs the consent, and ***no written consent
> shall be effective to take the corporate action referred to therein
> unless, within 60 days of the earliest dated consent delivered*** in the
> manner required by this section to the corporation, ***written consents
> signed by a sufficient number of holders or members to take action
> are delivered to the corporation*** by delivery to its registered office in
> this State, its principal place of business or an officer or agent of the
> corporation having custody of the book in which proceedings of
> meetings of stockholders or members are recorded.

8 *Del. C.* § 228(c) (emphasis added).  FPE asserts that the Association accepted votes

over a period of *63* days (from October 1, 2022 through December 3, 2022).

Although this Court will strictly enforce the technical requirements of Section 228,[3]

---

[2] The Association argues that the Ballot Solicitation was not a "corporate act" governed by Section 228 because the vote was undertaken at the request of Chesapeake Utilities Corp. ("Chesapeake").  Section 228(b) applies to "any action required by this chapter to be taken at a meeting of the members of a nonstock corporation, or *any action which may be taken at any meeting of the members* of a nonstock corporation."  8 *Del. C.* § 228(b) (emphasis added).  The Association does not suggest that a vote on the conversion could not have been taken at a meeting of the members.

[3] *See Espinoza v. Zuckerberg*, 124 A.3d 47, 57 (Del. Ch. 2015) (holding that a ratification by written consent is not "effective unless it complies with the technical requirements of Section 228"); *Carsanaro v. Bloodhound Techs., Inc.*, 65 A.3d 618, 641 (Del. Ch. 2013) ("When a consent specifically refers to exhibits and incorporates their terms, the plain language of Section 228(a) requires that a stockholder have the exhibits to execute a valid consent."); *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 152 (Del. Ch. 2003) (sustaining claim that written consents were invalid because they were not individually dated by the signers).

FPE has not submitted evidence demonstrating that any ballots were received more than 60 days after the earliest dated ballot that was delivered. Discovery may reveal otherwise, but I cannot conclude, at this stage, that FPE is likely to succeed on its challenge under Section 228.

I next consider whether FPE faces imminent, irreparable injury absent issuance of a preliminary injunction, and if the equities favor preliminary injunctive relief. I conclude that it does not, and they do not.

FPE premised its request for injunctive relief "[u]pon information, knowledge and belief" that the Association "has signed, or intends to sign, a contract with Chesapeake Utilities to commence the work necessary for the conversion." Mot. for Prelim. Inj. ¶ 21, Dkt. 1. According to the Association, however, its "limited role" in the conversion was to "(1) coordinate the individual resident vote and relay the results to Chesapeake; and (2) provide the Association's support through Board action based upon the result of the resident vote." Opp'n at 6. The Association explains that "[t]hose events have been complete[d] and the Association has provided its written authorization to Chesapeake as of April 25, 2023," and "[n]o further action is planned or required by the Association." *Id*. at 6-7. Thus, FPE has not established that it is likely to suffer imminent, irreparable harm in the absence of an injunction against the Association.

At the hearing on the Motion for Preliminary Injunction, FPE clarified that it also seeks to enjoin action by Chesapeake, which is named as a "notice party," but not a defendant, in this action. Chesapeake has submitted an application for approval to the Delaware Public Service Commission ("PSC"), and at the hearing on the Motion for Preliminary Injunction, FPE indicated that, in the absence of an injunction, it will seek relief before the PSC. The availability of a remedy in that forum, and my reluctance to interfere with the PSC's process, further support denial of the motion.

Finally, the Association reported the results of the member vote on December 22, 2022. Thereafter, FPE waited five months, until May 19, 2023, before seeking injunctive relief. That unexplained delay also weighs against granting preliminary injunctive relief.

For the reasons explained above, I recommend that the Motion for Preliminary Injunction be denied. This is a final report pursuant to Court of Chancery Rule 144.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Master in Chancery

cc:     All counsel of record (by File & ServeXpress)